## Pinkerton's National Detective Agency, Inc. v. Crosetto

*Folz, Bard, Kamsler, Goodis & Greenfield* and *Mc-Nees, Wallace & Nurick,* for plaintiff.

*James W. Wildeman,* for defendant.

SHELLEY, J., February 25, 1963.—This matter comes before us on defendants' exceptions to the adjudication of the chancellor[1] wherein defendants were enjoined from (a) taking any further action in the matter; (b) proceeding by subpoena or otherwise to investigate the question of the proper collective bargaining unit and collective bargaining agent of plaintiff's employes.

Defendants' exceptions do not question the sufficiency of evidence upon which the chancellor made his findings of fact, but assert generally that he had no jurisdiction to determine the facts. The uncontradicted evidence submitted to the chancellor, in our opinion, adequately supports the chancellor's factual findings which may be summarized as follows:

Plaintiff operates 48 branches in the United States and Canada, furnishing investigative and security services to its clients. In the course and conduct of its business, it received in excess of $100,000 in the calendar year 1961 for the performance of services in States other than Pennsylvania, and, during the same period, received in excess of $50,000 for services to Pennsylvania employers engaged in interstate commerce.

Security Officers and Watchmen Union, Local No. 1, is affiliated with International Brotherhood of Fire-

---

[1] 79 Dauph. 283 (1962).

men and Oilers, AFL-CIO, which organization admits to membership employes other than guards and security personnel. Pursuant to a petition filed by the union, defendants instituted representation proceedings to determine a collective bargaining agent for plaintiff's employes employed by C. Schmidt & Sons, Inc., in Philadelphia. Plaintiff filed a timely answer to the petition in the Schmidt case denying the jurisdiction of the Pennsylvania Labor Relations Board (hereinafter referred to as PLRB) and averred the exclusive jurisdiction of the National Labor Relations Board (hereinafter referred to as NLRB). Despite this answer, several hearings were held before an examiner of the PLRB, at each of which plaintiff contested the jurisdiction of the PLRB. Subsequent to the proceedings in the Schmidt case, defendants, at the instance of the union, began three additional representation cases, all of which relate to the representation of plaintiff's employes and involved precisely the same jurisdictional questions as were present in the Schmidt case. Plaintiff's request that hearings in these cases be postponed pending a determination of jurisdiction was denied.

The PLRB issued a subpoena duces tecum requiring plaintiff to produce documents concerning its relations with C. Schmidt & Sons, Inc., and five other employers in the Philadelphia area.

The NLRB has not ceded jurisdiction in this case to the PLRB and, indeed, has advised, on facts essentially identical with the facts in this case, that it would assert jurisdiction over the employer's operation in a representation proceeding involving this very union: Globe Security System, Inc., and Security Officers and Watchmen Union, Local No. 1, International Brotherhood of Firemen and Oilers, AFL-CIO, 137 NLRB No. 12, case no. AO-35, CCH 11,178, May 10, 1962.

The uncontradicted evidence taken before the chancellor is to the effect that plaintiff has, in Pennsylva-

nia, 576 guards performing services at 123 installations. There is nothing in the record to indicate that NLRB has declined to exercise its jurisdiction in any of the cases involving plaintiff's employes now pending before the PLRB. Moreover, the NLRB has consistently asserted and exercised jurisdiction in cases involving the representation of plaintiff's employes.

Since the adjudication of the chancellor has reviewed the authorities which we believe are controlling in this matter, it would serve no useful purpose to reiterate what has already been said. We do, however, take occasion to point out that we rest our determination in this matter on the adjudication. Since the history of the case, the findings of fact and conclusions of law are set forth in detail in the adjudication, no useful purpose would be served by including them seriatim in this opinion. We have examined the entire record, paying particular attention to the facts excepted to by the defendants. The conclusions of law which were made in the adjudication appear to be adequately supported by the facts. We can find no reason to alter the adjudication and decree nisi.

The record conclusively demonstrates that plaintiff is an employer engaged in interstate commerce within the meaning of the Labor Management Relations Act of June 23, 1947, 29 U.S.C.A. §141, 61 Stat. 136 et seq. Counsel for the PLRB admitted this fact when he said during the trial of the case:

"When this matter came before the board, it was obvious that Pinkerton is in interstate commerce. The board is well aware of that."

In an unbroken line of decisions, the Supreme Court of the United States and the Supreme Court of Pennsylvania have held that an agency of the State has no jurisdiction to hear a labor dispute which is arguably subject to the jurisdiction of the NLRB.

In a very recent case, the Supreme Court of the United States in Ex Parte George, 371 U.S. 72 (1962), held that a State court of Texas should have awaited an NLRB determination of jurisdiction before interfering with picketing which was arguably within the ambit of the Labor Management Relations Act of 1947, supra.

This decision followed closely on the decision by the same court in Marine Engineers Beneficial Association v. Interlake Steamship Co., 370 U.S. 173 (1962). In that case, the employer filed a complaint in the State court of Minnesota to restrain picketing by the union. The union filed a motion to dismiss, claiming that the dispute was arguably subject to the jurisdiction of the NLRB and thus beyond the cognizance of the State court. The trial court held that the dispute was within its jurisdiction and granted an injunction. On appeal, the Supreme Court of the United States reversed and held that the State court should have decided only whether the evidence was sufficient to show whether or not the union was a "labor organization" within the meaning of the Labor Management Relations Act of 1947, supra. As soon as such evidence appeared on the record, the court said it was the duty of the State court to dismiss the proceedings.

The Supreme Court, in the same case, said on page 181:

". . . Moreover, as the national agency charged with the administration of federal labor law, the Board should be free in the first instance to consider the whole spectrum of possible approaches to the question, ranging from a broad definition of 'labor organization' in terms of an entire union to a narrow case-by-case consideration of the issue. Only the Board can knowledgeably weigh the effect of either choice upon the certainty and predictability of labor management relations, or

assess the importance of simple administrative convenience in this area."

And on page 184 said:

"This was a case, therefore, where a state court was shown not simply the arguable possibility of Labor Board jurisdiction over the controversy before it, but that the Board had actually determined the underlying issue upon which its jurisdiction depended, i.e., that MEBA was a 'labor organization' for purposes of §8(b) of the Act. In the absence of a showing that this position had been authoritatively rejected by the courts, or abandoned by the Labor Board itself, we hold that it was the duty of the state court to defer to the Board's determination."

See also San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959).

Two recent decisions of the Supreme Court of Pennsylvania reached the same result. In Terrizzi Beverage Company v. Local Union No. 830, 408 Pa. 380 (1962), the Supreme Court of Pennsylvania reversed a decree of a lower court enjoining defendant union from coercing, intimidating and harassing plaintiff in an attempt to interfere with contractual relations existing between plaintiff and one of its suppliers. Holding that the dispute which gave rise to the litigation was a labor dispute over which the NLRB might have jurisdiction, the Supreme Court of Pennsylvania held that the matter must be litigated in the first instance before the NLRB and that a State agency was powerless to interfere. In reaching this conclusion, the court cited a long line of decisions of the Supreme Court of the United States, including the Marine Engineers case, supra.

The Supreme Court of Pennsylvania in Smith's Transfer Corporation v. Voice of Teamsters Democratic Organizing Committee, 409 Pa. 217 (1962), citing the Terrizzi case, said on page 219:

". . . If acts or practices complained of are 'arguably' within or may reasonably be deemed to come within the scope and protection of the so-called Taft-Hartley Act of 1947 . . . state courts must decline and yield jurisdiction in deference to the tribunal which Congress has selected for the determination of such issues in the first instance. . . ."

Under these decisions, the duty of the PLRB was clear. Since it appeared, in the first Schmidt hearing, that plaintiff was an employer engaged in interstate commerce within the meaning of the Labor Management Relations Act of 1947, supra, the PLRB was bound to dismiss the proceedings.

The PLRB, in its requests for findings of fact and conclusions of law, and in its exceptions to the chancellor's adjudication, has stressed the nonadversary aspect of representation proceedings.

In Allegheny Ludlum Steel Corporation v. Kelley, 49 N.Y.S. 2d 762 (1944), the employer sought to enjoin the New York State Labor Relations Board from conducting hearings to determine a collective bargaining representative of plaintiff's foremen. Employer was admittedly engaged in interstate commerce, and, at the time, the NLRB in the exercise of its discretion, refused to recognize foremen unions. The New York court recognized that, if the State board was without jurisdiction, there was ample authority for the injunction. The New York court found that there was no preemption of jurisdiction by the NLRB, and refused to issue the injunction. On appeal, the Supreme Court of the United States found that the NLRB had exclusive jurisdiction and that the State board should have been enjoined from the proceeding: Allegheny Ludlum Steel Corp. v. Kelley, 330 U.S. 767. (This case is also cited under the name of a companion case, Bethlehem Steel Co. v. New York State Labor Relations Board, 330 U.S. 767 (1947).)

In Pittsburgh Railways Company Substation Operators and Maintenance Employees' Case, 357 Pa. 379 (1947), the Supreme Court of Pennsylvania, at page 385 said:

"The issue,—determination of the collective bargaining unit and collective bargaining agent,—represents a basic and fundamental part of the Congressional regulation. Congress, having exercised its power, did not intend to permit state action with regard thereto. In Bethlehem Steel Company v. New York State Labor Relations Board, supra, Mr. Justice Jackson said (67 Sup. Ct. at 1031) : 'Comparison of the State and Federal statutes will show that both governments have laid hold of the same relationship for regulation, and it involves the same employers and the same employees. . . . If the two boards attempt to exercise a concurrent jurisdiction to decide the appropriate unit of representation, action by one necessarily denies the discretion of the other'. It becomes immaterial, therefore, that appellee might act in harmony and not inconsistent with the policy of the federal board. '. . . power to decide a matter can hardly be made dependent on the way it is decided': Bethlehem Steel Company v. New York State Labor Relations Board, supra, 67 Sup. Ct. at 1031."

The basic issue in this case is the arguable jurisdiction of the NLRB. This issue is disposed of not only by the admissions concerning the interstate nature of Pinkerton's business made during the hearings, but by the admission made by the counsel for the PLRB at the hearing before the chancellor. The problem of the PLRB, and through it, the problem of the union, is that the NLRB may not certify this union as the collective bargaining representative of the Pinkerton employes because of section 9(b) of the Labor Management Relations Act of July 5, 1935, 29 U.S.C.A. 159, 49 Stat. 453, as amended, which provides:

". . . That the Board shall not . . . (subsection (3) ) decide that any unit is appropriate for such purposes if it includes together with other employees, any individual employed as a guard to enforce against employes and other persons rules to protect property of the employer or to protect the safety of persons on the employer's premises; but no labor organization shall be certified as the representative of employees in a bargaining unit of guards if such organization admits to membership, or is affiliated directly or indirectly with an organization which admits to membership, employes other than guards."

Since the union is affiliated with an organization which admits to membership other than guards, the NLRB will have to refuse to certify the union as the representative of the Pinkerton guards. It certainly does not follow that the PLRB has jurisdiction. The very fact that the NLRB might refuse to certify the union is, in itself, an affirmation of the NLRB's jurisdiction, and a denial of the PLRB's jurisdiction. The NLRB will effectuate the congressional policy enunciated in section 9(b) (3), supra, only if the employer is engaged in interstate commerce; if it is not, there is no national policy to be vindicated. The NLRB's power to decide, and hence the PLRB's lack of power to decide, cannot be made dependent upon the manner in which the NLRB may decide: Bethlehem Steel Company v. New York State Labor Relations Board, supra.

Moreover, the NLRB will certify the union if the services performed by the Pinkerton employes are not essentially guard functions. The NLRB has held that it will certify an affiliated union as the bargaining representative for employes where their guard functions are only incidental to the primary function which they serve: Centor Co. and District 50—United Mine Workers of America, 136 NLRB 139, case no. 13-RC-

8259, CCH §11,136, April 25, 1962. Therefore, if the union can establish that the Pinkerton employes are performing other than guard duties, the NLRB will certify the union.

Further, if upon application of the union to the NLRB for certification, the NLRB would determine that it could not certify the union because of the provisions of section 9(b) (3) of the Labor Management Relations Act of 1947, supra, the union, by disaffiliating itself from the International Brotherhood of Firemen and Oilers, AFL-CIO, could bring itself within the provisions of section 9(b) (3), supra, and thus be in a position to be certified by the NLRB: In The Matter of Chrysler Corporation, Employer and Amalgamated Plant Guards, Local 114, United Plant Guard Workers of America, 79 NLRB 462 (1948).

Finally, the application by the union to the PLRB does not preclude or prejudice any subsequent application the union might make to the NLRB: In the Matter of Kaiser-Fraiser Parts Corporation, Employer and International Association of Machinists District Lodge 114, 80 NLRB 1050 (1948).

Equity, in our opinion, has jurisdiction to enjoin invalid administrative action. If, as we have already said, the PLRB has no jurisdiction to certify a bargaining representative for employes of an employer engaged in interstate commerce, it cannot be permitted to conduct its hearings and make its own finding that it lacks jurisdiction. If the PLRB would be permitted to do so, the employer would be subjected to a multiplicity of suits and the funds of the Commonwealth would be squandered in demonstrably fruitless hearings.

In Pennsylvania State Chamber of Commerce v. Torquato, 69 Dauph. 136 (1956), we enjoined the Department of Labor and Industry from paying any money out of the Unemployment Compensation Fund until a

decision was made by the Superior Court on the claims of Westinghouse employes for unemployment compensation arising out of the 1955 strike. It was further pointed out that there would be a multiplicity of suits unless equity intervened. Under the circumstances, it was held that equity will afford relief because the statutory remedy was not adequate.[2]

In Bell Telephone Company of Pennsylvania v. Driscoll, 50 Dauph. 66 (1941), we enjoined the Public Utility Commission from enforcing a section of the public utility law. The Supreme Court, in affirming our action, said in 343 Pa. 109 (1941), on page 112:

"We have no doubt about the right of the Court of Common Pleas of Dauphin County in the exercise of its equitable powers to entertain a bill to enjoin an administrative agency of the Commonwealth from exercising powers not conferred on it or unconstitutionally conferred on it. That point has been decided too frequently to be longer in doubt." (Citing cases).

In Western Pennsylvania Hospital v. Lichliter, 340 Pa. 382 (1941), the court affirmed an injunction issued against the PLRB from conducting any proceedings to certify a bargaining agent for the employes of certain hospitals. The court held that the hospitals were not employers within the meaning of the Pennsylvania Labor Relations Act and that equity could restrain an administrative agency from exercising powers not conferred upon it by the legislature, particularly in order to avoid a multiplicity of suits.

The conclusions of law made by the chancellor appear to be adequately supported by the facts, and we, therefore, make them our own. In view of the foregoing reasons, we agree with the adjudication of the chan-

---

[2] Affirmed by the Pennsylvania Supreme Court in 386 Pa. 306 (1956).

cellor and overrule all of defendants' exceptions and adopt as our final decree the chancellor's decree nisi.

We, therefore, make the following

### Final Decree

And now, February 25, 1963, the exceptions of defendants are herewith severally overruled, and final decree is entered in this case in accordance with the decree nisi.

### Dissenting Opinion

MILLER, J., February 25, 1963.—By its decision affirming the chancellor's adjudication, it is respectfully suggested that this court is discouraging the initial exercise of administrative discretion by the Pennsylvania Labor Relations Board, as required by the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, 43 PS §211.1 et seq. True, one might properly ask why the board did not proceed with dispatch to determine the jurisdictional question raised by plaintiff in the first application for designation of a collective bargaining agent for the Schmidt employes; certainly it would have been better to conclude this investigation, and render a decision, rather than to permit three companion applications to be advanced concurrently, with the resultant additional burden of litigation upon plaintiff. In the course of these numerous hearings, the issuance of the subpoenas directed to plaintiff's officials undoubtedly precipitated their flight to the shelter of the equity court, but this ancillary issue could have been resolved by application to the proper court, and the board's investigation thereafter concluded: 43 PS §211.10.

However, the possible malfunctions in the board's procedural machinery furnish no justification for depriving the board of its right to determine its jurisdiction in the first instance. A careful reading of the majority opinion indicates there is at least a question that

the NLRB has exclusive jurisdiction of this matter, and likewise, the Pennsylvania Board should not be foreclosed by what might have been an unfortunate remark made by its counsel before the chancellor. The majority correctly states that this court "has jurisdiction to enjoin invalid administrative action." But the effect of this decree is to halt administrative action while it is still inchoate, at a time when the question of its validity is premature.

It would appear more appropriate that equity should intervene only to the extent of stopping the processing of the companion applications, thus avoiding the possibility of "demonstrably fruitless hearings," while the board is directed to adjudicate promptly the jurisdictional question raised in the Schmidt application. Thereafter, the aggrieved party will have its right of appeal, and judicial review of the board's initial resolution of this challenge to its jurisdiction may be obtained in an orderly manner, if necessary. Such procedure was successfully followed in the Pittsburgh Railways case, cited by the majority, and also in PLRB v. Friedberg, 395 Pa. 294 (1959).

I, therefore, respectfully dissent from the majority opinion.