LA CROSSE TELEPHONE CORPORATION, Respondent, vs. WISCONSIN EMPLOYMENT RELATIONS BOARD, Appellant.*
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL B-953, A. F. L., Respondent, vs. SAME, Appellant.*

*November 18—December 23, 1947.*

*Certiorari* to United States supreme court granted.

For the appellant there were briefs by the *Attorney General, Stewart G. Honeck,* deputy attorney general, and *Beatrice Lampert,* assistant attorney general, and oral argument by *Mrs. Lampert.*

For the respondent La Crosse Telephone Corporation there were briefs by *Hale, Skemp & Nietsch* of La Crosse, and oral argument by *Thomas S. Skemp.*

For the respondent International Brotherhood of Electrical Workers, Local B-953, A. F. L., there was a brief by *Padway, Goldberg & Previant,* and oral argument by *David Previant.*

*Donald J. Martin* of Milwaukee, for the Communication Workers of America, Division 23.

Fritz, J.   The certification made by the Wisconsin Employ- ment Relations Board (hereinafter called "State Board") of the election of the Telephone Guild of Wisconsin (herein called "Guild") as the bargaining representative for certain employees of the La Crosse Telephone Corporation (herein called "Employer") was reversed and set aside by the circuit court on the grounds that the Employer is engaged in inter- state commerce, and that the decision in *Bethlehem Steel Co. v. New York State Labor Rel. Board,* 330 U. S. 767, 67 Sup. Ct. 1026, 91 L. Ed. 1234, leaves no constitutional author- ity in the State Board to determine collective-bargaining units and conduct collective-bargaining elections among employees or employers engaged in such commerce.

The principal issue on this appeal is, as stated in the State Board's brief,—

"Does the National Labor Relations Act preclude the Wis- consin Employment Relations Board from conducting an elec- tion to determine the desires of employees of the local [La Crosse] telephone corporation with respect to a collective- bargaining representative, irrespective of whether the National Labor Relations Board has ever taken any action involving

the company and its employees, and irrespective of whether the action of the state board contravenes any substantive provisions of the national act or any fixed policy of the national board?"

The Employer is a Wisconsin corporation and all its employees are employed in La Crosse county in this state in its operation of a local telephone service within the La Crosse area, and rendering in connection therewith such intrastate and interstate long-distance service as is incidental thereto. In and for some time prior to December, 1945, the employees in its *traffic* and its *plant* departments (which included all excepting its office workers) were represented for collective-bargaining purposes by the International Brotherhood of Electrical Workers, Local B-953, A. F. L. (herein called "Local B-953"). On December 19, 1945, Local B-953 and the Employer entered into a collective-bargaining agreement which was to continue in effect until December 1, 1946, and from year to year thereafter unless either party should give written notice ninety days prior to the annual expiration date requesting that the agreement be amended or canceled, and if an amendment was desired the contents thereof should be submitted by such party to the other on or before thirty days prior to the termination date of any year in which the ninety-day notice was given, but that changes mutually agreeable may be made at any time; and in said agreement a method of negotiation for the settlement of differences was also provided under which the Employer and Local B-953 agreed to meet and deal with each other through their duly accredited officers and committees. Local B-953 in a letter dated August 28, 1946, and addressed to E. B. Samp, Employer's vice-president and manager, stated that, "To meet the notice requirements of our agreement, we wish to notify you we desire to amend the agreement." Pursuant thereto negotiations concerning a new wage schedule were commenced between Samp and a committee of the traffic-department employees on August 31, 1946, and were likewise commenced between Samp and a

plant-department committee on September 3, 1946. Wage schedules for each department were agreed upon in those negotiations and were incorporated in a letter signed by Samp and by members of Local B-953 committees and addressed to Raymond A. Panzer at Eau Claire, who was business manager of Local B-953. In the letter in relation to the plant-department employees it was stated,—

"These negotiations resulted in the following proposed additions, changes, and deletions to our present agreement and were acceptable to both parties alike as evidenced by the signatures of acceptance hereon. . . . It was clearly understood by the undersigned that the other provisions of the present agreement as it affects traffic personnel remain unchanged."

However, in addition, representatives of Local B-953 and the Employer's officials on September 19 or 20, 1946, began negotiations for a provision which also was to be incorporated in each of the proposed contracts respecting the date when it might be opened for new wage negotiations; and at a meeting of Local B-953 on September 23d, the proposed wage-schedule amendments negotiated by its committees were rejected by it on the recommendation of its business manager because of the lack of a satisfactory reopening clause as to when the wage agreements could be modified under such a clause. Subsequently said business manager and Employer's officials tentatively agreed upon a date when the contract might be so reopened but, instead of accepting that date the members of Local B-953 on September 25, 1946, finally voted in favor of another date, March 1st, as the reopening date. The Employer was informed of Local B-953's ratification of this amendment by a letter mailed from Eau Claire on September 27th, and provisions respecting said reopening date were subsequently added to the above-stated letters containing the proposed wage schedules, and thereafter a new contract was drafted for the year beginning December 1, 1946. But

it had not been signed by the Employer's officials and the officials of Local B-953 when, on October 18, 1946, the State Board conducted a hearing in proceedings which resulted ultimately in the election and certification of the Guild as the bargaining representative of the plant and traffic departments' employees of the Employer.

Meanwhile, during the period of the above-stated negotiations the Guild, on September 20, 1946, filed with the National Labor Relations Board (herein called the "National Board") a petition to have the Guild certified as the bargaining representative of the Employer's employees, who were theretofore represented by Local B-953; and the Employer was notified by a letter from the National Board's office in Minneapolis, dated September 24, 1946, of the filing of the Guild's petition. But there is nothing in the record herein to indicate that the National Board ever took jurisdiction of or pursuant to said petition; and on October 8, 1946, the Guild filed with the National Board a request to approve the withdrawal thereof. Then on that date the Guild filed with the State Board a petition for the holding of an election by all the Employer's employees to determine what if any representation they desired for the purpose of collective bargaining. Pursuant to this petition the State Board conducted a hearing on October 18, 1946, and on November 27, 1946, filed its decision determining,—in connection with finding the facts stated above as to the negotiations in 1946 between the Employer and Local B-953, and its rejection of the proposed amendments to the collective-bargaining contract because there was no provision therein specifying the reopening date for reviewing the wage question, and there was no determination by Local B-953 as to such date until at the meeting of its members on September 25th, as to which the Employer was notified on September 26th or 27th,—that until the Employer was given such notice,—"no binding agreement had been entered into between the Employer and the union;" and that "There was

therefore, no binding agreement when the company was notified that another union claimed to represent a majority of the employees that the I. B. E. W. proposed to represent, and a contract entered into subsequent to the receipt of such notice cannot operate as a bar to an election."

Upon the matters thus determined, the State Board directed the conduct of the election in question. In its direction the Board gave the employees in each department (*i. e.,* the plant, traffic, and likewise the office departments) the opportunity to determine whether or not they desire to constitute themselves separate units; and directed that for the voting by the plant and traffic-departments' employees both the Guild and Local B-953 shall appear on the ballot, while for the office employees,—because of the fact that Local B-953 does not desire to represent them,—the only question submitted would be whether they desired to be represented by the Guild or not. At the election conducted by the State Board on November 27, 1946, the majority of the plant and traffic-departments' workers voted to constitute a single bargaining unit, which is the same group of employees which Local B-953 was bargaining for in the past and desired to continue to represent. By those employees, ninety-one votes were cast for the Guild, and fourteen in favor of Local B-953, as their representative. The office employees voted not to be included in the same bargaining unit as the other departments and not to be represented by any union. Pursuant to that election, the State Board on January 14, 1947, certified that the Guild was elected by the employees of the Employer (excepting its executive, supervisory, and office employees) as their bargaining representative; and this certification Local B-953 and likewise the Employer petitioned to have reversed and set aside by the circuit court.

There is nothing in the record of the proceedings before the State Board or in the circuit court to indicate that the National Board has ever in any manner exercised any of its

powers or discretion or otherwise taken jurisdiction of any question or phase of the Employer's or its employees' industrial relations. Although a petition that the Guild be certified as the bargaining representative of the Employer's employees had been filed by the Guild with the National Board on September 20, 1946, that Board apparently never took jurisdiction pursuant thereto, and the petition was withdrawn at the request of the Guild before it filed, on October 8, 1946, its petition with the State Board for the latter's direction to conduct and hold such an election.[1]

In *International B. of E. W. v. Wisconsin E. R. Board*, 245 Wis. 532, 15 N. W. (2d) 823, we pointed out, in line with the federal courts' ruling, that the National Board is not required to accept jurisdiction or exercise its powers on every petition or complaint filed with it. As we stated in that case,—

(p. 539) "When the National Labor Relations Board has acted in a particular case, the question of whether there is a conflict between the two jurisdictions is to be determined of course by the provisions of these acts. . . . If no proceeding is had under the National Labor Relations Act, no conflict of jurisdiction can arise. This matter was fully discussed in the *Rueping L. Co. Case* already referred to. *The National Labor Relations Board having never taken jurisdiction to certify the name of a bargaining agent, the state board could entertain proceedings relating to violations of state law. In so doing there was under such circumstance no conflict of jurisdiction.* Not every labor dispute arises to such dignity that it impedes and obstructs interstate commerce although the employer may be engaged in what has been defined as interstate commerce."

---

[1] Apparently (as is stated in an affidavit filed by counsel for Local B-953 on its motion to dismiss these appeals on the ground that the question involved therein has become moot) the Guild in May, 1947, filed another petition with the National Board requesting said Board to hold an election to determine a bargaining representative for the Employer's employees, and that petition was dismissed on the recommendation of the Board's regional director.

In *Public S. E. Union v. Wisconsin E. R. Board,* 246 Wis. 190, 194, 16 N. W. (2d) 823, we said,—

"The appellants contend—(1) That the board had no jurisdiction to issue an order restraining the president of the union from acting or attempting to act as a representative in any capacity for the employees of the company; suspending the right of the union to act as a collective-bargaining representative or as a representative in any capacity for the employees of the company and suspending the right of the officers of the union to serve as a representative in any capacity of the employees of the company. . . . We have considered the matter of conflict between Wisconsin and federal law in a number of other cases and have held that where the National Labor Relations Board has not taken jurisdiction in the controversy, no conflict exists."

See also *Allen-Bradley Local 1111 v. Wisconsin E. R. Board,* 315 U. S. 740, 62 Sup. Ct. 820, 86 L. Ed. 1154 (237 Wis. 164, 295 N. W. 791).

And there is nothing stated in our decision in *International Union v. Wisconsin E. R. Board,* 250 Wis. 550, 27 N. W. (2d) 875, 28 N. W. (2d) 254, which should be deemed to warrant concluding that the State Board's action in ordering the conduct and certifying the result of the election in question herein was not acting within its jurisdiction and powers. As we stated then, in duly applying and giving effect to the decision in *Bethlehem Steel Co. v. New York State Labor Rel. Board, supra,*—(p. 567)

"What the court held was that the National Labor Relations Board had exercised the jurisdiction delegated to it under the federal act by declining to designate the foremen as a bargaining unit. The declination was an exercise of its jurisdiction, just as much as granting it would have been. The jurisdiction vested in the National Labor Relations Board was to determine whether it would designate the foreman as a bargaining unit, and it exercised jurisdiction when it denied the application. No such situation exists in the instant case

as was involved in the *Bethlehem Steel Co. Case, supra.* In the first place, no application has been made to the National Labor Relations Board to exercise any jurisdiction of the labor dispute here involved. *The National Labor Relations Board not having exercised any jurisdiction* of such labor dispute *the state board may exercise jurisdiction* of it. *No conflict is here involved.* There was a direct conflict in the *Bethlehem Steel Co. Case.* The National Labor Relations Board had determined that foremen could not form a unit for collective bargaining and the state board said that they could and formed such a unit. The National Labor Relations Board's decision barred the state board from taking any action at all."

The State Board's action, which is under consideration on these appeals, does not involve the exercise of its discretion nor the formulation of any policy which does or could vary from those of the National Labor Relations Act. The mere fact-finding procedure of the State Board in the ascertainment of the facts, and its thereupon ordering and conducting an election and certifying the result thereof, constitutes action in merely its ministerial capacity (*United R. & W. D. S. E. of A. v. Wisconsin E. R. Board,* 245 Wis. 636, 641, 15 N. W. (2d) 844; *J. F. Quest Foundry Co. v. International M. & F. W. Union,* 216 Minn. 436, 441, 13 N. W. (2d) 32; *National Labor Rel. Board v. Botany Worsted Mills* (3d Cir.), 133 Fed. (2d) 876, 882) ; and does not deny to the National Board or interfere with its right to exercise its discretion and powers if it should ever conclude to exercise its jurisdiction and powers in that respect to determine the appropriate bargaining representative or unit of representation. But, although the National Board's power over that subject is paramount, it is not exclusive in such a case as we have here, until the federal power is exercised or jurisdiction thereto is taken as to particular employees.

There cannot be sustained the contention of the Employer and Local B-953 that the State Board erred in determining

that no new binding contract had been finally entered into between them in 1946 prior to the Employer's receiving notice that another union claimed to represent a majority of the employees whom Local B-953 had been representing. Although in the course of the negotiations between Samp and committees of employees in the traffic and also the plant departments they had come to agree, by September 19th or 20th, as to the wage schedules and working hours, no new contract had been completely written or signed by the Employer and by Local B-953, as the bargaining agent, because, as stated above, they had not been able, in their negotiations, to agree upon the date at which the proposed contract might be reopened for new wage negotiations. After the amended wage schedule and working hours, which had been negotiated by Samp and the employee committees, were rejected by the employees' action at their Local B-953's meeting on September 23d because of the lack of a mutually satisfactory reopening provision, the Employer was not informed until by a letter mailed from Eau Claire on September 27th, that the union membership finally voted to set March 1st as the date on which negotiations as to wages might be reopened. But a new contract for the year beginning December 1, 1946, was not drafted until some time after September 27, 1946, and apparently no such contract had been executed by the officials of Local B-953 or the Employer when, on October 8, 1946, the Guild filed its petition with the State Board for an election of the employees to determine what collective-bargaining representation they desired, or even when the Board filed its direction for the holding of such election.

Neither can there be sustained the Employer's and Local B-953's contention that the results of the balloting at the election did not provide sufficient basis for the State Board's certification that the Guild had been selected as the majority representative of the employees in the traffic and the plant departments, and that the Guild's petition be dismissed in so

far as it related to the office employees. As claimed by the State Board, the results of the votes cast appear to be to the following effect. Of the one hundred fourteen employees in the traffic department who were eligible to vote, fifty-two voted against having the employees of that department bargaining collectively as a separate unit, and thirteen in favor thereof; and sixty-four voted for the Guild and one for Local B-953 as their bargaining representative. Of forty employees in the plant department eligible to vote, twenty-five voted against a separate bargaining unit, and twelve in favor thereof; and twenty-seven voted for the Guild and thirteen for Local B-953 as their representative. Consequently of the one hundred five employees who voted that they desired to bargain together, ninety-one desired to be represented by the Guild, and fourteen by Local B-953. Of thirty-one office employees eligible to vote, ten voted in favor of a separate unit, and eighteen voted against it or having any collective-bargaining representation. The vote as to whether the employees of traffic department desired to bargain as a separate unit, and as to whether the employees of the plant department desired to bargain as a separate unit was decidedly against each of these departments bargaining as a separate unit. The alternative thereto was not necessarily a unit which would include office employees. No question submitted to the employees on their ballots was contingent upon the result of any other, either in wording or in spirit. The votes of the employees in the traffic and plant departments as to who should constitute their representative for collective-bargaining purposes were unconditional; and of the one hundred five employees in those departments who voted that they desired to bargain as a unit, ninety-one voted unconditionally to be represented by the Guild. The State Board had published advance notices of the election with sample ballots, but neither Local B-953 nor any other party made any request of the Board prior to the election that it be conducted in a different manner. If there were any

objection to the manner in which the Board proposed to hold the election, the objection should have been submitted to the Board, and as none was so submitted, it cannot be raised for the first time upon review in court. As is provided in sec. 111.07 (7), Stats.,—

"No objection that has not been urged before the board shall be considered by the court unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."

It follows that the judgments under review must be reversed and the causes remanded with directions to enter judgments sustaining the State Board's direction of the election and its certification of the results thereof.

*By the Court.*—Judgments reversed in each case, and causes remanded with directions to enter judgments in accordance with this opinion.