LA CROSSE TELEPHONE CORP. *v.* WISCONSIN EMPLOYMENT RELATIONS BOARD ET AL.

NO. 38.

Argued November 18–19, 1948.—Decided January 17, 1949.

*Thomas H. Skemp* argued the cause for appellant in No. 38. With him on the brief was *Quincy H. Hale.*

*Louis Sherman* argued the cause for appellant in No. 39. With him on the brief was *Philip R. Collins.*

*Beatrice Lampert,* Assistant Attorney General of Wisconsin, argued the cause for appellees. With her on the brief were *Grover L. Broadfoot,* Attorney General, and *Stewart G. Honeck,* Deputy Attorney General. *John E. Martin,* then Attorney General, was on a statement opposing jurisdiction.

*Solicitor General Perlman, David P. Findling, Ruth Weyand* and *Mozart G. Ratner* filed a brief for the United States, as *amicus curiae,* supporting appellants.

*T. McKeen Chidsey,* Attorney General, *M. Louise Rutherford,* Deputy Attorney General, and *George L. Reed,* Solicitor, Labor Relations Board, filed a brief for the Commonwealth of Pennsylvania, as *amicus curiae,* in No. 39, urging affirmance.

*Donald J. Martin* filed a brief for the Communication Workers of America, Division 23, supporting appellees.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

These cases, here on appeal from the Wisconsin Supreme Court, 28 U. S. C. § 344 (a), 43 Stat. 937, 45 Stat. 54, present the question whether a certification of a union by the Wisconsin Employment Relations Board, Wis. Stats. 1947, ch. 111, as the collective bargaining representative of the employees of appellant company, conflicts with the National Labor Relations Act, 49 Stat. 449, 29 U. S. C. §§ 151 *et seq.*

Prior to 1945 the appellant company recognized the appellant union as the collective bargaining representative of its plant and traffic department employees. The company and the union entered into a collective bargaining agreement which by its terms was to continue from year to year unless terminated by either party on a specified notice. At a time when certain provisions of that agreement were being renegotiated a rival union, the Telephone Guild, filed a petition with the National Board asking that it certify the collective bargaining representative of these employees. Before the National Board acted, the Guild withdrew its petition and filed a petition with the Wisconsin Board seeking the same relief.

The Wisconsin Board held a hearing and directed that separate elections be held among the employees in the plant, traffic, and office departments of the company to determine whether they desired to be grouped in a single unit or in departmental units and what representative, if any, they desired to elect. After the election the Wisconsin Board certified that the employees in the plant and traffic departments had elected to combine in a single bargaining unit and had chosen the Guild as their collective bargaining representative, and that the employees in the office department had elected to constitute themselves as a separate unit and had chosen not to have any collective bargaining representative.

Each appellant brought an action in the Wisconsin courts to have the certification set aside. The Circuit Court, relying on *Bethlehem Steel Co.* v. *New York Labor Relations Board,* 330 U. S. 767, held that the Wisconsin Board was without jurisdiction to issue the certification. The Supreme Court of Wisconsin reversed. 251 Wis. 583, 30 N. W. 2d 241.

*First.* We are met at the outset with a contention that the certification of the Wisconsin Board which has been sustained by the Wisconsin Supreme Court is not a "final judgment" within the meaning of § 237 (a) of the Judicial Code, 28 U. S. C. § 344. The argument is that under Wisconsin law the certification is no more than a report on the results of an investigation made known to the parties for such use as they may desire, that nothing can be done by any state agency to enforce observance of the certification, that the company cannot be required to bargain with the certified union until and unless an unfair practice charge is lodged against it, and that in such proceeding all the issues involved in the certification proceeding can be relitigated. If that contention is correct, the case is of course not ripe for the intervention of the federal judicial power. See *Rochester Telephone Corp.* v. *United States,* 307 U. S. 125, 130–131 and cases cited.

But it has not been shown that the Wisconsin law gives such slight force to the certification. The statute provides that the representative chosen by the employees shall be the exclusive one for purposes of collective bargaining. § 111.05 (1). Provision is made for the board to take a secret ballot of the employees and to certify the results thereof, whenever a question arises concerning the representation of employees in a collective bargaining unit. § 111.05 (3). And the statute contains the following direction: "The board's certification of the results of any election shall be conclusive as to the findings in-

cluded therein unless reviewed in the same manner as provided by subsection (8) of section 111.07 for review of orders of the board."[1]  § 111.05 (3).  The certification in these cases has been reviewed and sustained by the highest court of Wisconsin.  While that certification is not irrevocable for all time,[2] it fixes a status to which Wisconsin provides a sanction.  For it is an unfair labor practice for an employer to refuse to bargain with the representative of a majority of the employees.[3]  § 111.06 (d). And since § 111.05 (3) makes the certification, subject to judicial review, "conclusive as to the findings included therein," it would seem that the certification cannot be collaterally attacked in that proceeding or heard *de novo*. We are pointed to no Wisconsin authority to the effect that it can be.

On this phase of the case we are, indeed, referred to only one Wisconsin authority and that is *United R. & W. D. S. E.* v. *Wisconsin Board,* 245 Wis. 636, 15 N. W. 2d 844.  But that case merely held that an order of the Wisconsin Board that a referendum of employees by secret ballot be held to determine whether an "all union" agreement was desired was not reviewable.  It did not

---

[1] That review extends to administrative decisions affecting legal rights, duties, and privileges whether affirmative or negative in form, § 227.15, and is allowed any person aggrieved and directly affected by the administrative decision.  § 227.16.

[2] Section 111.05 (4) provides "The fact that one election has been held shall not prevent the holding of another election among the same group of employes, provided that it appears to the board that sufficient reason therefor exists."

[3] Section 111.06 (d) also provides that where an employer files with the board a petition requesting a determination as to majority representation "he shall not be deemed to have refused to bargain until an election has been held and the result thereof has been certified to him by the board."  But we are pointed to no authority holding that where a certification has already been made, a recertification can be demanded.  Section 111.05 (3), indeed, makes the certification "conclusive."

deal with a certificate which was in fact reviewed and sustained by the same court as in the present cases. It is true that in the opinion below, the Wisconsin Supreme Court said that the "mere fact-finding procedure" of the Wisconsin Board in ascertaining the facts, in ordering an election, and in certifying the result "constitutes action in merely its ministerial capacity." 251 Wis. at 592, 30 N. W. 2d at 245. But that comment was directed to the lack of discretion which the state statute had left the Wisconsin Board. It had no relevance to the effect of the certification under Wisconsin law.

While the Wisconsin Employment Relations Board seems readier than some to reexamine the status of a bargaining representative on the ground that it has lost the support of a majority,[4] it nevertheless appears to be Wisconsin law that a certification is binding upon an employer so long as it stands.[5]

We assumed in *Allegheny Ludlum Steel Corp.* v. *Kelley,* 330 U. S. 767, that the certification of a collective bargaining representative, sustained by the highest court of the state, was a final judgment, although it did not of itself command action but like the certification here was enforcible in law only by another proceeding.[6]

We think that is the correct view. The fact that Wisconsin's certification was not in the form of a command

---

[4] See § 111.05 (4), *supra,* note 2; *Rydahl's Launderers & Cleaners,* Wis. E. R. B. Decision No. 677 (1944); *UAW-CIO and Four Wheel Drive Auto Co.,* Wis. E. R. B. Decision No. 687 (1944); cf. *AUA and Garton Toy Co.,* Wis. E. R. B. Decision No. 1238 (1947); Killingsworth, State Labor Relations Acts 161–62 (1948).

[5] See *In re United Brotherhood of Carpenters & Joiners,* 2 L. R. R. M. 894 (Wis. County Cir. Ct., 1938); *In re Charles Abresch Co.,* 3 L. R. R. M. 639 (Wis. E. R. B. Decision No. 744, 1938); cf. *Wisconsin Board* v. *Hall Garage Corp.,* 18 L. R. R. M. 2419 (Wis. County Cir. Ct., 1946).

[6] In *Allegheny Ludlum Steel Corp.* v. *Kelley, supra,* suit had been brought in the state court for a declaratory judgment to restrain

24

is immaterial. See *American Federation of Labor* v. *Labor Board,* 308 U. S. 401, 408. It was not an abstract determination of status. Nor was it merely an interim adjudication in an uncompleted administrative process. It established legal rights and relationships. It told the employer, subject to judicial review, with whom he could not refuse to negotiate without risk of sanctions. The character of the certification was therefore such as to make it reviewable under the appropriate standards for exercise of the federal judicial power.

*Second.* The Wisconsin Supreme Court concluded that the Wisconsin Board could exercise jurisdiction here until and unless the National Board undertook to determine the appropriate bargaining representative or unit of representation of these employees. That view was urged on us in the like cases coming here under a New York statute. In *Bethlehem Steel Co.* v. *New York Labor Relations Board, supra,* at 776, we rejected that argument, saying:

> "The State argues for a rule that would enable it to act until the federal board had acted in the same case. But we do not think that a case by case test of federal supremacy is permissible here."

the state labor board from determining a representative of plaintiff's supervisory employees to bargain collectively with the plaintiff. Under New York law the labor board had authority to hold elections to determine employee representation and to certify the results. 30 McKinney's Cons. Laws § 705. Certification in itself, as in the instant case, did not impose a legal penalty. Suit had to be brought in an unfair labor practice proceeding to accomplish such result. 30 *Ibid.* § 706. Refusal to bargain with the representative of the employees was an unfair labor practice. 30 *Ibid.* § 704 (6). Even though the New York law did not state, as does the Wisconsin law, that certification by the board was conclusive, we considered a decision of the New York court approving the jurisdiction of the state board to conduct a representative proceeding a final judgment ripe for our consideration.

We went on to point out that the National Board had jurisdiction of the industry in which those particular employers were engaged and had asserted control of their labor relations in general. Both the state and the federal statutes had laid hold of the same relationship and had provided different standards for its regulation. Since the employers in question were subject to regulation by the National Board, we thought the situation too fraught with potential conflict to permit the intrusion of the state agency, even though the National Board had not acted in the particular cases before us.

Those considerations control the present cases. This employer is concededly engaged in interstate commerce; and the industry is one over which the National Board has consistently exercised jurisdiction.[7] The Wisconsin Act provides that a majority of employees in a single craft, division, department or plant of an employer may elect to constitute that group a separate bargaining unit. § 111.02 (6). The federal act leaves that matter to the discretion of the board.[8] When under those circumstances the state board puts its imprimatur on a particular group as the collective bargaining agent of employees, it freezes into a pattern that which the federal act has left

---

[7] See *Elyria Telephone Co.,* 58 N. L. R. B. 402; *Newark Telephone Co.,* 59 N. L. R. B. 1408; *People's Telephone Corp.,* 69 N. L. R. B. 540; *Ohio Telephone Service Co.,* 72 N. L. R. B. 488.

The appellant company operates a telephone business in La Crosse County, Wisconsin. It is a subsidiary of the Central Telephone Co., whose subsidiaries operate telephone businesses in many states. The concession that the company is engaged in interstate commerce is based on the interstate telephone calls which it handles.

[8] "The Board shall decide in each case whether, in order to insure to employees the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the policies of this Act, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof."

fluid.[9] In practical effect the true measure of conflict between the state and federal scheme of regulation may not be found only in the collision between the formal orders that the two boards may issue. We know that administrative practice also disposes of cases in which no order has been entered. Disposition of controversies on an administrative as distinguished from a formal basis will often reflect the attitudes of the National Board which have not been reduced to orders in those specific cases. A certification by a state board under a different or conflicting theory of representation may therefore be as readily disruptive of the practice under the federal act as if the orders of the two boards made a head-on collision. These are the very real potentials of conflict which lead us to allow supremacy [10] to the federal scheme even though it has not yet been applied in any formal way to this particular employer. The problem of employee representation is a sensitive and delicate one in industrial relations. The uncertainty as to which board is master and how long it will remain such can be as disruptive of peace between various industrial factions as actual competition between two boards for supremacy. We are satisfied with the wisdom of the policy underlying the *Bethlehem* case and adhere to it.

The result we have reached is not changed by the Labor Management Relations Act of 1947, 61 Stat. 136, 29

---

[9] Moreover, the Wisconsin Act excludes from the definition of employee those working in a supervisory capacity. § 111.02 (3). They were, however, included under the protection of the federal act as then written. *Packard Motor Co.* v. *Labor Board,* 330 U. S. 485. The definition of employee under the Wisconsin Act also excludes certain strikers and others who have not been at work for certain periods. § 111.02 (3). These latter exceptions likewise do not in the main square with the definition of employee contained in § 2 (3) of the federal act.

[10] U. S. Const. Art. VI.

U. S. C. Supp. I, §§ 141 *et seq.* That Act grants the National Board authority under specified conditions to cede its jurisdiction to a state agency.[11] But it does not appear that there has been any cession of jurisdiction to Wisconsin by the National Board in representation proceedings.[12]

*Reversed.*

MR. JUSTICE RUTLEDGE, having joined in the dissent in *Bethlehem Steel Co.* v. *New York Labor Relations Board,* 330 U. S. 767, see p. 777, acquiesces in the Court's opinion and judgment in this case.

---

[11] Section 10 (a) of the National Labor Relations Act, as amended, now provides in part: "the Board is empowered by agreement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry (other than mining, manufacturing, communications, and transportation except where predominantly local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this Act or has received a construction inconsistent therewith."

[12] The agreement of August 27, 1948, between the National Board and the Wisconsin Board is restricted to the implementation of § 14 (b) of the federal act. See 22 L. R. R. 268.