LOCAL 756 INTERNATIONAL UNION, UAW, and others, Respondents, vs. LE ROI DIVISION, WESTINGHOUSE AIR BRAKE COMPANY, Appellant.*

*December 7, 1956—January 7, 1957.*

* Motion for rehearing denied, with $25 costs, on March 5, 1957.

For the appellant there were briefs by *Fairchild, Foley & Sammond, Richard L. Harrington,* and *Harrold J. Mc-Comas,* all of Milwaukee, and oral argument by *Mr. Harrington.*

For the respondents there was a brief by *Max Raskin,* and oral argument by *William F. Quick,* both of Milwaukee.

WINGERT, J. Appellant contends that the circuit court had no jurisdiction to entertain the union's action, for the

reason that such jurisdiction is foreclosed by the federal labor relations legislation and the principles announced in *La Crosse Telephone Corp. v. Wisconsin E. R. Board,* 336 U. S. 18, 69 Sup. Ct. 379, 93 L. Ed. 463, *Weber v. Anheuser-Busch, Inc.,* 348 U. S. 468, 75 Sup. Ct. 480, 99 L. Ed. 546, and like cases (but see *Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp.* 348 U. S. 437, 75 Sup. Ct. 489, 99 L. Ed. 510). In the view we take of the case, the jurisdictional question need not be decided on this appeal, since plaintiff invoked the jurisdiction of the state court, and assuming such jurisdiction, its complaint must be dismissed on the merits.

The question on the merits is whether the contract between the parties which took effect November 1, 1954, was terminated pursuant to its terms by action of the defendant employer. Following is the material provision of the contract:

"Article XVI. Termination. Wage Reopener.
"131. This agreement shall take effect on November 1, 1954, and shall remain in full force and effect until March 1, 1956, and thereafter from year to year unless either party shall give notice in writing sixty (60) days in advance of the expiration date of this agreement, or any recurrent period thereafter to the other party, of its desire to make changes, amendments, or to terminate same. This agreement shall also continue as long thereafter as the parties may require to negotiate a new agreement, or until either party terminates said negotiations by written notice."

The disputed question of termination arose out of the following occurrences:

On December 15, 1955, the union notified the company in writing that it desired modifications in the contract "to be presented at our first meeting." On December 23, 1955, the company notified the union that it also desired to make changes in the contract which it would submit in detail at a

later date. No written notice of intention to "terminate" was given by either party sixty days in advance of March 1, 1956.

On December 28, 1955, the company received a letter from another union referred to as District 50, stating that a majority of the employees had signed membership cards designating that union as their representative, and asking to meet and negotiate a contract. On January 3, 1956, the plaintiff union wrote the company suggesting a meeting on January 13th to negotiate the modifications in the existing contract desired by the parties. On January 13th the plaintiff's bargaining committee presented themselves at the defendant's conference room, but no one appeared for the company. On January 23d, the company wrote the plaintiff union as follows:

"Under the National Labor Relations Act the company is required to bargain with the union representing a majority of the employees in the bargaining unit. We do not presently know which union is the majority representative. However, the current contract with your union runs until March 1, 1956, and thereafter until terminated by written notice of termination of negotiations.

"Accordingly, we hereby notify you as follows:

"1. Effective immediately, we do not recognize Local 756, UAW-CIO as the majority representative and, therefore, will not negotiate a new agreement with your union.

"2. We will continue to abide by the provisions of the current labor agreement until its expiration date, March 1, 1956.

"3. Negotiations referred to in paragraph 131 of the labor agreement are terminated as of March 2, 1956."

On February 20th, the plaintiff notified the company in writing of its desire to meet to negotiate differences. On February 25th the company refused to meet with the plaintiff's committee.

By letter dated March 2, 1956, the company asked the plaintiff union to participate in an election by the company to

resolve the question of representation, which request the plaintiff declined on March 13th.

This action was commenced on March 26, 1956.

The employer, appellant here, contends that the contract of November 1, 1954, was terminated as of March 2, 1956, by the letter of January 23, 1956. We agree, and so hold.

Contract paragraph 131, quoted above, provided that the agreement should remain in force until March 1, 1956, "and thereafter from year to year unless either party shall give notice in writing sixty (60) days in advance of the expiration date . . . of its desire to make changes, amendments, or to terminate same."

While neither party gave notice of desire to "terminate," both gave due notice of desire to make changes. Such notification prevented the automatic renewal of the contract for another year. (See *Socony-Vacuum Oil Co.* 100 NLRB 90, 91; *American Lawn Mower Co.* 108 NLRB 1589, 1591.) It did not, however, terminate it, for the next sentence of paragraph 131 read thus:

"This agreement shall also continue as long thereafter as the parties may require to negotiate a new agreement, or until either party terminates said negotiations by written notice."

On January 23d, the company gave written notice to the union that "negotiations referred to in paragraph 131 of the labor agreement are terminated as of March 2, 1956." If the parties had been actively negotiating for a new or amended contract, then by this January 23d letter the company would have operated to "terminate said negotiations by written notice."

The trial court held, however, that there had been no actual "negotiations" to terminate, and hence the January 23d letter did not "terminate said negotiations" and hence did not terminate the contract. The court considered that in order to

have "negotiations," "actual negotiations, by conferences and discussion, must have been begun and had before the contract could be terminated by written notice." Thus if representatives of the company and the union had sat down face to face and discussed the desired contract changes for an hour before January 23d, then the company's letter would have terminated "negotiations" and would have been effective to terminate the contract, but in the absence of such face-to-face meeting, which in the circumstances must have been futile, neither party could terminate it.

In our view that reading of the controlling sentence of paragraph 131 is too literal, and a different interpretation would better accord with the purpose of the provision. That purpose, as it appears from the context, was not to compel negotiations or prevent either party from bringing the contract to an end at or after its stated expiration date, but instead was merely to continue the contract as a contract at will after it would otherwise expire, if and so long as both parties should so desire while trying to negotiate a new or amended agreement. Thus the provision was not a contractual mandate to negotiate, but merely a stop-gap measure to prevent a hiatus in the event that a new agreement should not be reached by March 1st, and should both parties wish to keep on trying thereafter to agree on a new contract to take the place of the old one. It recognizes that either party is contractually free to call off such negotiations. It should not be construed to require, as a condition precedent to the exercise of that right, a purely futile formality of meeting to "negotiate." The purpose of the contractual provision will be better served by the construction that negotiations may be "terminated" *ab initio,* without requiring a purely perfunctory meeting for pretended and insincere negotiations which would serve no purpose, where either party concludes that it does not wish to or cannot legally proceed with an attempt to agree on a new contract, and that written notice of such

termination *ab initio* suffices to prevent the continuation of the contract after its stated expiration date.

We consider, therefore, that defendant's letter of January 23d was effective to terminate the contract according to its terms. Since no issue of fact appears, and both parties moved for summary judgment, it follows that defendant's motion for summary judgment should have been granted, and the judgment appealed from must be reversed, and the complaint dismissed.

Our decision merely construes a contract as a matter of state law. We do not pass upon nor intimate any view with regard to the rights or obligations of the parties under the national labor relations legislation nor as to whether defendant's conduct in refusing to negotiate and bringing about a termination of the contract was a breach of duty imposed by federal law.

*By the Court.*—Judgment reversed, with directions to dismiss the complaint.