**TRUCK DRIVERS AND HELPERS LO-
CAL UNION NO. 696, Plaintiff,**

*v.*

**GROSSHANS & PETERSEN, INC. d/b/a
Petersen Ready-Mix, Defendant.**

**No. T–2933.**

United States District Court
D. Kansas.

Sept. 11, 1962.

McCullough, Parker & Wareheim, Topeka, Kan., for plaintiff.

William G. Haynes (of Lillard, Eidson, Lewis & Porter), Topeka, Kan., and Robert F. Galloway, Marysville, Kan., for defendant.

TEMPLAR, District Judge.

This is an action under section 301(a) of the National Labor Relations Act, 29 U.S.C.A. § 185, to compel arbitration un-

der the relevant section of a collective bargaining agreement between the parties. The defendant has filed a motion to compel answer to a certain interrogatory relative to the grievance procedure and a motion to dismiss based on the grounds that this Court is without jurisdiction of the subject matter; is without jurisdiction and barred from the exercising of the relief requested; and is without jurisdiction because the complaint fails to state a claim for which relief may be granted. The factual situation is as follows:

The Truck Drivers and Helpers Local Union No. 696, Topeka, Kansas, an unincorporated labor organization, and Grosshans & Petersen, Inc. d/b/a Petersen Ready-Mix, a Kansas corporation, entered into an agreement dated August 21, 1957. This agreement was for the purpose, *inter alia,* of establishing the hours, wages, and other conditions of employment, and to adopt measures for the settlement of differences, and the agreement was to be in effect from June 1, 1957, until June 1, 1959, and was to "continue in effect from year to year thereafter unless written notice of desire to change, amend or terminate is given by either party not less than sixty (60) days prior to the annual expiration date." Article IX of the agreement defines grievances and explains the procedure should a grievance occur, and Article XI pertains to strikes and lockouts.

Article IX reads in pertinent part as follows:

"1. All grievances and disputes arising under this Agreement between the Employer and the Union will be handled as hereinafter provided.

\* \* \* \* \* \*

"3. Grievances are defined as any dispute over the interpretation or application of the provisions of this Agreement. Grievances not presented to the Employer within five (5) days after the alleged incident giving rise thereto shall be considered as waived. All grievances shall be presented in writing. All grievances shall be handled in accordance with the following steps, and it is understood that any settlements made at any of such steps will be final and binding upon all parties.

"1. Between the Employer and the aggrieved employee, either with or without the job steward and such employee's foreman.

"2. If no satisfactory settlement is reached within ten (10) working days in Step 1, the employee shall then take the matter up with the business representative of the Union who will discuss the grievance with the properly designated representative or representatives of the Employer.

"3. If no settlement is reached within fifteen (15) working days, the business representative of the Union and the plant manager or his designated representative or representatives shall attempt to settle the grievance.

"4. If no settlement is made of the grievance pursuant to the provisions of Steps 1, 2, and 3 within twenty (20) working days, the matter shall be referred to a Board of Arbitration consisting of one representative selected by the Employer and one representative selected by the Union, and a third impartial member chosen by the two said arbiters. The decision of the said Board of Arbitration on the issues as submitted in writing, shall be final and binding on all parties, provided that the Board shall have no power to add to, subtract from, or alter the provisions of this Agreement. The cost of arbitration shall be borne equally between the Union and the Employer. The Board of Arbitration shall be selected within a period of thirty (30) days after the grievance shall have reached the 4th Step in this procedure. Any grievance on the part of the Employer shall be handled by and in accordance with Steps 3 and 4 above. The

Employer shall advise the Union in writing of any grievance settlements made with any individual employee.

"The above is subject to the right of individual employees to present and settle their grievances without intervention of the bargaining representative, so long as the adjustment is not inconsistent with the terms of this Agreement, and provided that the bargaining representative has been given an opportunity to be present at such adjustment."

*Article XI* reads:

"The Union agrees that there shall be no strikes, work stoppages, slow down or picketing during the term of this Agreement, and the Employer agrees that there shall be no lockouts. It is understood that it shall not be a violation of this Agreement for a driver to refuse to cross an authorized picket line."

On July 16, 1961, while the Agreement was in effect, the Truck Drivers and Helpers Local Union No. 696 brought this action to require Petersen Ready-Mix "to submit grievances and complaint of the plaintiff to the Board of Arbitration * * *." However, the statement of jurisdictional grounds set forth in the complaint and on which plaintiff relies reads as follows:

"3. This action is brought in accordance with Title III, Section 301(a) cited as (June 23, 1947, c. 120, Title III, Paragraph 301, 61 Stat. 156; 29 U.S.C.A. Paragraph 185.) In accordance with said statute, plaintiff brings this action asking the Court to order arbitration and to issue mandatory injunction commanding the defendant to submit to grievance procedure and to arbitrate grievances filed by the Union on behalf of the defendant's employees.

"4. There is in effect a duly executed labor agreement between the plaintiff and the defendant. Under said agreement plaintiff is the exclusive bargaining agent for the employees of the defendant * * *.

"5. In accordance with said agreement, plaintiff has made demands for arbitration under said agreement and defendant refuses to abide by the terms of said agreement. That according to the terms of the contract defendant refuses to pay the wage scales provided for its employees."

Before proceeding further with the state of the pleadings in this matter, the statute, 29 U.S.C.A. § 185(a), [§ 301(a)] should be considered. It reads:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry *affecting commerce* as defined in this chapter, * * * may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." (Emphasis supplied)

Inspection of the complaint filed in this case reveals that it is void of any allegation that the industry involved herein is within the "affecting commerce as defined in this chapter" clause.

Rule 8(a), F.R.Civ.P., 28 U.S.C.A. requires that a claim for relief contain a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it. Non-compliance with the rule results in dismissal of the complaint unless the defect is corrected by amendment. Further, the complaint must show affirmatively jurisdiction of the subject matter, and when such affirmative averments are not made, the complaint may be dismissed on motion. Jurisdictional sanctity is determined solely from the allegations of the complaint.

Notwithstanding the insufficiency of the statement of jurisdictional grounds for this lawsuit, the Court feels that a motion to dismiss on this basis should not be granted without making certain that jurisdiction is lacking and cannot be shown by amendment. Rule 15

(a), F.R.Civ.P. provides that the party may amend a pleading at any time by leave of court and the court hereby grants to the plaintiff leave to amend its pleading to aver properly, if it can do so in good faith i. e. if it feels that it can sustain the burden of proving the jurisdictional facts pertaining to the industry involved and pertaining to how the industry affects commerce. [See 29 U.S.C.A. § 142(1).] This plaintiff should not be deprived of its day in Court on a technicality.

The Court turns now to the remaining pleadings, motions and other papers filed in this lawsuit.

On January 10, 1962, defendant filed its answer in which it claimed to be without knowledge of the legal status of the plaintiff; admitted that it was a corporation authorized to do business in Kansas but denied that it was a Kansas corporation; admitted the execution of the labor agreement aforementioned but denied that plaintiff is the exclusive bargaining agent for the employees and that the agreement provides a grievance procedure which provides for a Board of Arbitration; denied that the action was properly brought, that plaintiff had acted in accordance with said agreement, that defendant had refused to pay the wage scales provided to employees and denied that defendant had refused to comply with the aforesaid terms of the collective bargaining agreement; and denied generally every allegation except those specifically admitted.

Thereafter interrogatories were directed to plaintiff and to defendant. Some were answered and others were objected to. In addition, some of the answers were objected to. A memorandum of decision was written by the Honorable Arthur J. Stanley, Chief Judge, on June 29, 1962, D.C., 209 F.Supp. 161, and the net result is that the issues of whether or not the union represents the employees and whether or not procedural arbitrability was complied with are even clearer than when raised by the complaint and answer.

While the interrogatories and answers thereto were being exchanged, the defendant on February 9, 1962, filed the motion to dismiss on the grounds heretofore stated. On July 11, 1962, a regularly scheduled motion day, arguments on the motion were made and thereafter briefs and reply briefs were filed.

■ It appears to the Court that before proceeding further that it should consider the law pertaining to the validity of a bargaining agreement which was admittedly executed but where, after execution thereof, it is alleged the Union never represented a majority of the employees.

One of the primary defenses that is being made by the employer is that a section 301(a) action cannot be brought in Federal Court if the Union does not represent a majority of the employees of the employer. In the recent case of Retail Clerks International Ass'n, Local Unions Nos. 128 & 633 v. Lion Dry Goods, Inc., 369 U.S. 17, 82 S.Ct. 541, 548, 7 L.Ed.2d 503, the United States Supreme Court considered the proposition of the necessity of making a preliminary determination of the representative status of the labor organization involved. Insofar as section 301(a) is concerned, the Court concluded unanimously, the contract need only be an "agreement between employers and labor organizations significant to the maintenance of labor peace between them." The wording of the Court which applies to the issue herein is:

"Had Congress thought that there was any merit in limiting federal jurisdiction to suits on contracts with exclusive bargaining agents, we might have expected Congress explicitly so to provide, for example, by enacting that § 301(a) should be read with § 9(a). Compare § 8(a) (3), § 8(a) (5), § 8(b) (3), § 8(b) (4), § 8(d). Moreover, § 8(f), the 1959 amendment considered supra, p. [10] 27, contemplates contracting with unions that would not represent a majority. Lastly, if the federal

courts' jurisdiction under § 301(a) required a preliminary determination of the representative status of the labor organization involved, potential conflict with the National Labor Relations Board would be increased, cf. La Crosse Telephone Corp. v. Wisconsin Employment Relations Board, 336 U.S. 18, 69 S.Ct. 379, 93 L.Ed. 463; Amazon Cotton Mill Co. v. Textile Workers Union, 4 Cir., 167 F.2d 183, and litigation would be much hindered."

In an answer to an interrogatory that defendant name all employees of defendant who are performing work covered under the contract, the job they are doing and the wages paid, the defendant stated:

"In June, 1957, the Defendant executed the collective bargaining agreement (Exhibit A) only after threats of picketing were made by representatives of plaintiff unless the Agreement was signed. The Union did not at any time establish that a majority of the Defendant's employees desired to be represented by plaintiff. A few weeks before the Agreement was executed the employees delivered to the Defendant a statement signed by each of them wherein the employees expressed a desire not to be represented by the Union. The Union did not at any time attempt to represent the employees in any way after "Exhibit A" was signed by the Defendant and never at any time filed a grievance with the Defendant as provided by Article IX of 'Exhibit A.' Accordingly, none of defendant's employees were covered by 'Exhibit A' at the date Interrogatory number 5 was asked."

This statement indicates to the Court that the contract involved herein was "significant to the maintenance of labor peace between Union and Management." The Court feels that it cannot say as a matter of law that the contract was not legally executed and that the contract was not significant to the preservation of peace between labor and management. In other words, the question of whether or not the plaintiff represents a majority or any of the employees is inconsequential. All that is necessary for the Union to gain standing in Court under section 301(a) is that there be in effect a contract executed for the apparent purpose of preserving harmony between the parties.

■ The next matter that the Court will consider is whether or not it has jurisdiction of the subject matter.

The employer in its brief asserts that the case of Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510, is controlling because the Union is attempting to recover wages which is a uniquely personal right of each employee. In that case the Union brought an action on behalf of some 4000 Westinghouse employees to recover back pay alleged to have been due said employees in accordance with the terms of the collective bargaining agreement then in effect. The Supreme Court found the Federal Court to be without jurisdiction because the individual employees have always been able to enforce their individual rights in state courts, and the scope of the jurisdictional grant of § 301 of Federal Courts should not be extended under such circumstances. The defendant then cites Communications Workers of America, AFL–CIO v. Ohio Bell Telephone Co., D.C., 160 F.Supp. 822, affirmed at 6 Cir., 265 F.2d 221 per curiam, cert. den. 361 U.S. 814, 80 S.Ct. 52, 4 L. Ed.2d 61, and quotes as follows:

"Westinghouse is plain authority that the Union may not maintain an action in the District Court to collect wages due employees. The Union's asking for specific performance of the Agreement instead of individual judgments in favor of the employees did not change the substance of the action."

After giving due consideration to these cases and others cited in the defendant's brief, the Court concedes that Westing-

house has not been overruled and that, therefore, section 301 did not grant to Unions the right to enforce in a federal court "a *uniquely personal right* of an employee for whom it had bargained." (United Construction Workers, Division of Dist. 50, United Mine Workers of America v. Electro Chemical Engraving Co., 175 F.Supp. 54, p. 55.)

■ However, after a careful reading of the collective bargaining agreement involved herein, it is abundantly clear to the Court that the company has bound itself to arbitrate the issue of whether or not the company has refused to pay the wage scales provided therein; the plaintiff is concerned over a dispute with the employer under the collective bargaining agreement. It is not seeking any relief on behalf of individual employees but rather is seeking to "arbitrate grievances filed by the Union on behalf of the defendant's employees;" it is seeking to enforce its group rights under the contract. Under such circumstances, the Court has jurisdiction over the subject matter because the matter involves an obligation running to a union—it is a controversy between the union and the company. (Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972.)

The Court's examination of the decisions discloses that much time has been spent laboring over the relationship of Lincoln Mills, supra, and Westinghouse, supra. The Supreme Court in Lincoln Mills, supra, 353 U.S. p. 456, 77 S.Ct. p. 917, stated the distinction between the cases to be as follows:

"Assn. of Westinghouse Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510, is quite a different case. There the union sued to recover unpaid wages on behalf of some 4,000 employees. The basic question concerned the standing of the union to sue and recover on those individual employment contracts. The question here concerns the right of the union to enforce the agree-

ment to arbitrate which it has made with the employer."

And so, the Court concludes that here the question is whether or not the union has a right to enforce the agreement to arbitrate and the Court hereby determines that the Union has such a right to bring an action to arbitrate under this agreement.

Moreover, assuming there is some conflict between Lincoln Mills and Westinghouse, this Court is already committed to the constitutional-jurisdictional concept of section 301(a) of the Lincoln Mills decision. Indeed, in Employees Labor Ass'n of Proctor & Gamble Mfg. Co. v. Proctor & Gamble Mfg. Co., 1959, D.C., 172 F.Supp. 210, Chief Judge Stanley stated positively:

"* * * Since the decision of the Supreme Court in Textile Workers Union of America v. Lincoln Mills * * *, there can be no question concerning the jurisdiction of this court to entertain an action for specific performance of a collective bargaining agreement. * * *" (172 F.Supp. pp. 211, 212.)

■ The next matter that the Court will consider is whether or not it is barred from the exercising of the relief requested. As stated previously the Union is asking for a mandatory injunction to compel arbitration. The whole argument arises from the request for a mandatory injunction and the gist of it is that under the provisions of the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., a Court cannot issue an injunction "in any case involving or growing out of any labor dispute." In the recent case of Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 1329, 8 L.Ed.2d 440, the Court considered this matter. It stated the question to be:

"The question this case presents is whether § 301 of the Taft-Hartley Act, in giving federal courts jurisdiction of suits between employers and unions for breach of collective bargaining agreements, impliedly repealed § 4 of the pre-existing Norris-

LaGuardia Act, which, with certain exceptions not here material, barred federal courts from issuing injunctions 'in any case involving or growing out of any labor dispute.'"

The Supreme Court concluded, by a 5–3 vote, that section 301 did not impliedly repeal section 4 of Norris-La-Guardia and that therefore the federal court could not entertain Sinclair's section 301 suit seeking an injunction against the breach of a no-strike clause.

But this decision is not applicable to the present situation. Here the situation is identical to the Lincoln Mills case, and in that case it was held that since "the congressional policy in favor of the enforcement of agreements to arbitrate grievance disputes [is] being clear, there is no reason to submit them to the requirements of § 7 of the Norris-La-Guardia Act." (353 U.S. pp. 458, 459, 77 S.Ct. p. 919.)

The Court finds, under the decisions, that there is available to the parties an order mandatorily enjoining arbitration since there is in effect a valid collective bargaining agreement. Under the circumstances, a contrary view would be to ignore the clear mandate of Lincoln Mills which has placed the controlling emphasis on the agreement to arbitrate.

Thus far, the Court has concluded that it has jurisdiction over the subject matter; that it may grant the relief sought; and that the Union need show only the existence of a collective bargaining agreement significant to the maintenance of labor peace under section 301(a). In addition, the Court has granted to the plaintiff leave to amend its complaint on the matter of jurisdictional grounds for instituting this action.

There remains the matter of procedural arbitrability. This matter is intertwined between the last part of the motion to dismiss and the motion to compel the answer to the interrogatory relative to the grievance procedure. Thus the motions, insofar as procedural arbitrability is concerned, will be considered together. The argument pertaining to procedural arbitrability is that under the grievance procedure heretofore set out a grievance that is not presented to the employer within five days after the alleged incident giving rise thereto is waived. The defendant's contention, apparently, is that since the answer to the interrogatories did not clarify whether or not there had been compliance with all the steps designated in the grievance procedure clause, the Court should forthwith dismiss the case. The defendant quotes from Brass & Copper Wkrs. Fed. Lab. Un. No. 19322, AFL–CIO v. American Brass Company, 272 F.2d 849, 852, 1959, 7th Cir., Cert. Den. (1960) 363 U.S. 845, 80 S.Ct. 1609, 4 L.Ed.2d 1728, Rehearing Denied (1960) 364 U.S. 856, 81 S.Ct. 34, 5 L.Ed.2d 81, as follows:

"Further, having found that the district court properly considered the issue of procedure arbitrability, we find no error in its disposition of this case. Even considering the events most favorable to appellants * * *, appellant's request for arbitration came too late under the terms of the Agreement, since it was made thirteen days after receipt of the final answer." (pp. 854, 855.)

In the recent case of Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462, Mr. Justice Byron White stated:

"Under our decisions, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties. 'The Congress * * * has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' United Steelworkers [of America, AFL-CIO] v. Warrior &

Gulf Nav. Co., 363 U.S. 574, 582 [80 S.Ct. 1347, 4 L.Ed.2d 1409]."

If it is the Court's duty to determine which issues must be arbitrated, it is also the Court's duty to determine if the parties have complied with the conditions precedent relevant to the arbitration procedure set out in the collective bargaining agreement.

It is apparent from the Court's examination of the record that plaintiff's answer to interrogatory No. 3 required by the Court's ruling on June 29, 1962, is not responsive in the detail required. The Court will require that interrogatory No. 3 be answered in the manner directed by the former order. When this is done a proper determination of defendant's motion to dismiss will be made.

Counsel for the defendant will prepare and submit an appropriate journal entry.